**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION**

**UNITED STATES OF AMERICA**                                                                                       **PLAINTIFF**

**V.**                                       **CASE NO. 5:18-CR-50022**

**MICHAEL HILL**                                                                                                **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Currently before the Court is Defendant Michael Hill's *pro se* Motion for Compassionate Early Release/Reduction in Sentence (Doc. 38).  The Court appointed the Federal Public Defender to "consider Mr. Hill's motion for compassionate release and provide any supplemental briefing necessary." (Doc. 39).  Public Defender Bruce D. Eddy then filed a Supplement to Mr. Hill's Motion (Doc. 40).  Following that, the Court directed the Government to file a response, and the Government did so.  *See* Doc. 44.  Now that the Motion is ripe, the Court finds that it should be **DENIED** for the reasons explained below.

**I.  BACKGROUND**

On October 12, 2018, Mr. Hill was sentenced after pleading guilty to one count of possession with intent to deliver more than 50 grams of methamphetamine.  The Court sentenced him to 84 months imprisonment, three years of supervised release, a fine of $2,900.00, and a special assessment of $100.00.  (Doc. 36).  This sentence represented a rather significant downward departure from the original Guideline sentencing range of 130–162 months, which was calculated based on the significant quantity of methamphetamine trafficked by Mr. Hill, coupled with his extensive criminal history that

1

resulted in 13 criminal history points, mainly for drug-related offenses, and a criminal history category of VI.  *See* Doc. 37, ¶¶ 46–60.[1]

The Government moved for a downward departure that effectively lowered the Guideline range to 84–105 months.  The Court then fixed Mr. Hill's sentence at the very bottom of that Guideline range after considering his very powerful and longstanding addiction to methamphetamine, the fact that he had not been deterred from distributing illegal substances in the community over the past two decades, the fact that he was 55 years of age and had not changed his behavior despite multiple encounters with law enforcement, and his preexisting health conditions, among other considerations.  *See* Sentencing Transcript, Doc. 43, pp. 30–33.  In imposing a sentence of 84 months, the Court also noted that it believed "that in some respects, it could make a pretty strong argument for an upward variance," but that, given the mitigating factors considered, a bottom-of-the-Guideline sentence was "most appropriate."  *Id.* at p. 33.

Along with acknowledging Mr. Hill's relatively advanced age, drug addiction, and health problems, the Court also commented during sentencing on the health problems suffered by Mr. Hill's wife and mother, which Mr. Hill had described in a letter to the Court.  *See* Doc. 29-2.  Mr. Hill stated in that letter that his wife had recently been diagnosed with Stage 3 cancer and that his elderly mother had suffered a heart attack.  *Id.*  The Court explicitly considered these facts at the time of sentencing, remarking to Mr. Hill:  "You've got various other ailments and so all of that is somewhat mitigating, and you have just a really bad run of family health issues as you explained to me in your letter, and I'm sorry

---

[1] Two additional criminal history points were added to Mr. Hill's criminal history score, for a total of 15 points, because he committed the instant offense while serving a state-imposed suspended sentence for another drug crime.  *See* Doc. 37, ¶ 59.

2

to hear about all that." (Doc. 43, p. 32). By the same token, the Court also noted that a term of imprisonment was justified in Mr. Hill's case, given that his criminal history had become progressively more serious over the previous decade. *Id.* at p. 29. Moreover, the Court commented that Mr. Hill had not demonstrated respect for the law throughout his adulthood, and the Court believed that the sentence it imposed "would [need to] have a deterrent effect" because it was likely that Mr. Hill would recidivate and because there was a strong "need to protect the public" from Mr. Hill, due to his "demonstrated history of not just purchasing and possessing for [his] own use," but "distributing the very drug, that [he's] so addicted to, into our community and, thus, hooking other people on this drug." *Id.* at p. 30. Thus, the 84-month term of imprisonment that was ultimately imposed was very carefully tailored to Mr. Hill's unique circumstances and the Court's full knowledge of all the facts set forth above, including Mrs. Hill's recent cancer diagnosis.

  Mr. Hill is currently incarcerated at FCI Texarkana with a projected release date of April 23, 2024. He has served less than 20 months of his original 84-month sentence but now moves for early, compassionate release due to his wife's serious medical condition and her alleged lack of available caregivers. It appears from the letters in the Bureau of Prison's ("BOP") file that Mr. Hill has been requesting early release since around the time he was first committed to BOP custody. In fact, Mr. Hill made a formal request to the warden of FCI Texarkana for early, compassionate release, based on the alleged lack of available caretakers for his wife, on January 17, 2019—approximately three months after this Court imposed sentence in his case. (Doc. 38, p. 7). Warden Geter at FCI Texarkana granted initial approval of Mr. Hill's request on July 2, 2019. *Id.* At that point, the warden requested that the Probation Office for the Western District of Arkansas review and

consider Mr. Hill's supervised release plan, which contemplated early release to his mother's home in Rogers, Arkansas. Probation approved the plan. *See id.* at p. 2. Next, Mr. Hill's request was forwarded to the General Counsel's office of the BOP for final approval, and it seems that at that point, the request hit a snag. The General Counsel's office apparently solicited further information and documentation from the warden to support the recommendation. In response, Warden Geter sent a follow-up letter on November 25, 2019. *Id.* at p. 3. Then, on January 13, 2020, Acting Warden Wolfe sent another detailed letter to the General Counsel's office attaching documentation. *Id.* at pp. 4–5. The letter from Acting Warden Wolfe describes that Mrs. Hill had "reached out to institution staff making weekly phones [sic] calls, with emotional pleas, for us to release her husband so that she can be properly cared for." *Id.* at p. 4. Mrs. Hill also got "in contact with Arkansas Senator John Boozman begging his office to assist." *Id.*

As of today's date, the Court understands that the General Counsel's office has not yet approved Mr. Hill's request for early release. Mr. Hill asks the Court to intervene in the process and order his immediate release.

## II.  LEGAL STANDARD

The First Step Act of 2018 ("FSA") permits an inmate to seek a sentence reduction directly from the sentencing court "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A)(i). Before the enactment of the FSA, a motion for compassionate release had to be filed by the Director of the BOP and an inmate could not unilaterally file one with the court. *See*

*United States v. Fox*, 2019 WL 3046086, at *1 (D. Me. July 11, 2019).  The FSA now allows inmates to file directly with the court, provided that the above exhaustion requirements are satisfied. 18 U.S.C. § 3582(c)(1)(A).

The Court's jurisdiction to rule on Mr. Hill's motion is dependent on whether he: (1) fully exhausted his administrative right to appeal the BOP's failure to bring a motion for early release or (2) allowed 30 days to lapse since the warden received his request for early release—whichever event is sooner.  Here, it is clear that more than 30 days have passed since the warden at FCI Texarkana first received Mr. Hill's request for compassionate early release.  More to the point, well over a year has passed since Mr. Hill made that initial request.

Warden Geter granted initial approval on July 2, 2019.  Subpart G to Title 28 of the Code of Federal Regulations details the procedures that the BOP must follow in implementing 18 U.S.C. § 3582(c)(1)(A).  According to 28 C.F.R. § 571.62(a), once the warden of the prison approves a prisoner's request for compassionate early release, the matter must then be referred in writing to the Office of General Counsel.

> If the General Counsel determines that the request warrants approval, the General Counsel shall solicit the opinion of either the Medical Director or the Assistant Director, Correctional Programs Division depending upon the nature of the basis of the request . . . . [and] the opinion of the United States Attorney in the district in which the inmate was sentenced. With these opinions, the General Counsel shall forward the entire matter to the Director, Bureau of Prisons, for final decision, subject to the general supervision and direction of the Attorney General and Deputy Attorney General.

28 C.F.R. § 571.62(a)(2).

It appears that in Mr. Hill's case, the General Counsel's office was not immediately satisfied that the request warranted approval, so further documentation was solicited.

5

That follow-up information was sent by the acting warden of Mr. Hill's facility in January of 2020, and no decisions have been made since that time. Given these facts, both Mr. Hill and the Government believe that the Court has jurisdiction to review the request for early release, and the Court agrees.

Pursuant to the FSA, the Court may grant a defendant's motion for a reduction in sentence "after considering factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court looks to the Sentencing Commission's policy statement in the United States Sentencing Guidelines ("USSG") as a starting point in determining what constitutes "extraordinary and compelling reasons" under § 3582(c)(1)(A)(i). *See id.* The policy statement at USSG § 1B1.13(1)(A) contemplates a reduction in the term of imprisonment if "extraordinary and compelling reasons warrant the reduction." As appliable to this particular case, Application Note 1(C)(ii) defines "extraordinary and compelling reasons" to include the following:

> (C)   Family Circumstances.
>
>    . . . .
>
>    (ii)    The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

Although the Sentencing Commission has not updated nor adopted a new policy statement since the FSA was enacted, the policy statement nonetheless provides guidance as to what constitutes extraordinary and compelling reasons for the purposes

of 18 U.S.C. § 3582(c)(1)(A).  *See, e.g., United States v. Schmitt*, 2020 WL 96904, at *3 (N.D. Iowa Jan. 8, 2020).

### III.  DISCUSSION

Mr. Hill's request for a reduction in sentence may be granted by this Court if it finds that (1) extraordinary and compelling reasons warrant such a reduction; and (2) the reduction in sentence is appropriate after considering the factors set forth in 18 U.S.C. § 3553(a).

### A.  Extraordinary and Compelling Reasons

The extraordinary and compelling reasons for early release that Mr. Hill relies upon in his Motion are that his wife is incapacitated with cancer and that he is the only available caregiver.  Assuming Mr. Hill's wife is, indeed, incapacitated by her cancer diagnosis, the Court would still need additional, credible evidence as to the lack of alternative caregivers in order to make a definitive finding that Mr. Hill is the only available caregiver.  Moreover, the Court was apprised at the time of sentencing of the facts concerning Mrs. Hill's illness and the challenges she might face in receiving care after Mr. Hill was incarcerated.  The Court took these facts into account when imposing sentence.

With regard to Mr. Hill's current argument that he is now the only available caregiver for his wife, the Court accepts as true that Mrs. Hill's parents are deceased and that her adult daughter, an opioid addict, is not an available caregiver.  However, the Court has little information about Mrs. Hill's sister, who lives in California and is simply described as "not in a position to travel to Arkansas." (Doc. 38, p. 9).  Additionally, Mr. Hill confirms that an unnamed "friend" is currently looking after Mrs. Hill, *id.* at p. 10, but the Court has no information about the friend and would need further details about the

7

caregiving relationship in order to conclude that it is not sustainable.  Finally, it appears that Mrs. Hill is a Medicaid patient, *see* Doc. 38, p. 5, and the record does not disclose whether Mr. Hill has explored the possibility that Mrs. Hill may be eligible to receive home health services through that program.  For these reasons, Mr. Hill has failed to meet his burden in establishing extraordinary and compelling reasons for early release.

## B.  Section 3553(a) Factors

If the Court were to assume for the sake of argument that Mr. Hill had demonstrated extraordinary and compelling reasons for early release, the fact remains that granting a reduction in sentence would only be appropriate if the factors set forth in 18 U.S.C. § 3553(a) counseled in favor of doing so.  Here, the Court finds that the nature and circumstances of Mr. Hill's drug trafficking offense weigh against granting early release.  He sold methamphetamine out of the residence that he shared with his wife, and he was held accountable for trafficking more than 100 grams of actual methamphetamine.  His extensive criminal history over the past 20 years roughly coincides with his extensive drug addiction, which the Court doubts has been adequately addressed during the relatively short time Mr. Hill has been incarcerated.  Accordingly, these factors lead the Court to believe that he is very likely to recidivate if he is released now.

Further, the Court is not persuaded that the time Mr. Hill has spent incarcerated has been sufficient to demonstrate to him the importance of having respect for the law.  Mr. Hill committed the offense of conviction while under a criminal justice sentence.  He benefited from a significant downward departure, and the Court also took into account his age and poor health, as well as his wife's and his mother's poor health, when sentencing

8

Mr. Hill at the bottom of the already-reduced Guideline range. Allowing Mr. Hill to be released after completing less than 20 months of his sentence would fail to serve as an adequate deterrent to Mr. Hill or to others who commit similar, serious drug offenses. In sum, the Court believes that the amount of time Mr. Hill has served to date fails to constitute a sentence that is sufficient to accomplish the goals of sentencing and to afford just punishment in Mr. Hill's particular case.

### IV.  CONCLUSION

**IT IS THEREFORE ORDERED** that Michael Hill's *pro se* Motion for Compassionate Early Release/Reduction in Sentence (Doc. 38) is **DENIED.**

**IT IS SO ORDERED** on this 5th day of June, 2020.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE